THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ZANE STRATTON,<br><br>                Plaintiff,<br><br>v.<br><br>THOMPSON/CENTER ARMS, INC.,<br><br>                Defendant. | **MEMORANDUM DECISION<br>AND ORDER ON MOTIONS IN LIMINE<br>[145], [146], [147], [148], and [150]**<br><br>Case No. 4:18-cv-00040-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

This order deals with a series of motions regarding experts, filed by each party.

Plaintiff Zane Stratton has filed four motions to exclude expert testimony in this action. Specifically, Mr. Stratton moves to preclude testimony from:

- Dr. Sam Fadala, who is offered as an expert in use, operation, and design of muzzleloading rifles;[1]

- Mr. Marlin Jiranek, who is offered as an expert in metallurgy, firearm design, and material failure analysis;[2] and

- Mr. Lance Martini, who is offered an expert in firearms failure and toolmark evidence.[3]

---

[1] Plaintiff's Motion in Limine to Exclude the Testimony of Sam Fadala ("Motion to Preclude Fadala"), docket no. 147, filed December 10, 2021.

[2] Plaintiff's Motion in Limine to Limit the Testimony of Defense Expert Marlin Jiranek ("Motion to Limit Testimony of Jiranek"), docket no. 150, filed December 10, 2021.

[3] Plaintiff's Motion in Limine to Exclude Lance T. Martini as an Expert Witness ("Motion to Preclude Martini"), docket no. 148, filed December 10, 2021.

Mr. Stratton has also filed a motion to exclude cumulative expert testimony.[4]

Defendant Thompson has opposed the Motion to Preclude Fadala,[5] the Motion to Limit Testimony of Jiranek,[6] the Motion to Preclude Martini,[7] and the Motion to Exclude Cumulative Expert Testimony.[8] Plaintiff has filed replies in support of the Motion to Preclude Fadala,[9] the Motion to Preclude Jiranek,[10] the Motion to Preclude Martini,[11] and the Motion to Exclude Cumulative Expert Testimony.[12]

**Thompson's Motion to Exclude Chandran**: Thompson has also filed a motion to preclude testimony from Dr. Ravi Chandran, an expert for whom Mr. Stratton never provided an expert report.[13] Mr. Stratton does not oppose the Motion to Preclude Chandran.[14]

For the following reasons, Plaintiff's Motion to Preclude Fadala is GRANTED IN PART and DENIED IN PART; Plaintiff's Motion to Limit Testimony of Jiranek is GRANTED;

---

[4] Plaintiff's Motion in Limine to Limit Cumulative Expert Testimony ("Motion to Exclude Cumulative Expert Testimony"), docket no. 146, filed December 10, 2021.

[5] Opposition to Plaintiff's Motion in Limine to Preclude the Testimony of Defense Expert Sam Fadala ("Opposition to Motion to Preclude Fadala"), docket no. 171, filed January 26, 2022.

[6] Opposition to Plaintiff's Motion in Limine to Limit the Testimony of Defense Expert Marlin Jiranek ("Opposition to Motion to Limit Testimony of Jiranek"), docket no. 169, filed January 26, 2022.

[7] Opposition to Plaintiff's Motion in Limine to Exclude Lance T. Martini as an Expert Witness ("Opposition to Motion to Preclude Martini"), docket no. 170, filed January 26, 2022.

[8] Opposition to Plaintiff's Motion in Limine to Limit Cumulative Expert Testimony ("Opposition to Motion to Exclude Cumulative Expert Testimony"), docket no. 172, filed January 26, 2022.

[9] Reply Memorandum in Support of Plaintiff's Motion in Limine to Limit the Testimony of Defense Expert Sam Fadala ("Reply in Support of Motion to Preclude Fadala"), docket no. 178, filed February 8, 2022.

[10] Reply Memorandum in Support of Plaintiff's Motion in Limine to Limit the Testimony of Defense Expert Marlin Jiranek ("Reply in Support of Motion to Limit Testimony of Jiranek"), docket no. 177, filed February 8, 2022.

[11] Plaintiff's Reply Memorandum in Support of Motion in Limine to Exclude Lance T. Martini as an Expert Witness ("Reply in Support of Motion to Preclude Martini"), docket no. 175, filed February 7, 2022.

[12] Reply Memorandum in Support of Plaintiff's Motion in Limine to Limit Cumulative Expert Testimony ("Reply in Support of Motion to Exclude Cumulative Expert Testimony"), docket no. 179, filed February 8, 2022.

[13] Motion to Preclude Testimony of Ravi Chandran or Relying on Work Done by or Communications with Dr. Chandran ("Motion to Preclude Chandran"), docket no. 145, filed December 10, 2021.

[14] Plaintiff's Non-Opposition to Defendant's Motion to Preclude Testimony of Ravi Chandran or Relying on Work Done by or Communications with Dr. Chandran ("Response to Motion to Preclude Chandran"), docket no. 185, filed February 16, 2022.

Plaintiff's Motion to Preclude Martini is GRANTED IN PART and DENIED IN PART; and

Plaintiff's Motion to Exclude Cumulative Expert Testimony is DENIED. Additionally,

Defendant's Motion to Preclude Dr. Chandran is GRANTED.

**Contents**

Background ................................................................................................................. 3
Discussion .................................................................................................................... 3
    Dr. Fadala may not offer causation opinions ...................................................... 5
        Dr. Fadala's methods are not reliable ............................................................ 5
        There is too large a gap between Dr. Fadala's methods and the conclusions he makes ............................................................................................................. 7
    Mr. Jiranek may not provide expert testimony based on methods that Dr. Block did not use. .......................................................................................................................... 9
    Mr. Martini may testify about the characteristics of the subject bullet, but not about the cause of the explosion ........................................................................................... 11
        Mr. Martini's Causation Opinions .............................................................. 11
        Mr. Martini's Subject Bullet Opinions ....................................................... 14
    Plaintiff's Motion to Exclude Cumulative Testimony is Denied ....................... 14
    Defendant's Motion to Exclude Dr. Chandran is granted.................................. 15
Conclusion and Order ............................................................................................... 16

## BACKGROUND

This action arises out of injuries Mr. Stratton suffered as a result of a muzzleloading rifle explosion in Cedar City, Utah. When Mr. Stratton fired the rifle (the "Subject Rifle"), it exploded, causing serious damage to his hand. Both the Subject Rifle and the bullet that was in the rifle when it was fired (the "Subject Bullet") were later recovered. Thompson has disclosed several witnesses as experts to testify on the rifle failure, including Dr. Fadala, Mr. Jiranek, and Mr. Martini. Mr. Stratton has filed motions to preclude or limit the expert testimony of a number of these witnesses.

## DISCUSSION

Pursuant to Federal Rules of Evidence 702, which provides the standard for admission of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[15]

The proponent of the expert testimony bears the burden of establishing that the offered expert meets the standards required by Rule 702.[16]

Rule 702 requires an expert's opinion to not only be reliable, but also relevant.[17] Reliability requires a determination that "the reasoning or methodology underlying the testimony is scientifically valid", and that the reasoning or methodology is characterized by an appropriate degree of intellectual rigor.[18] Opinions which are connected to the case only by the *ipse dixit* of the expert do not pass muster under Rule 702.[19] Furthermore, there must be a "fit" between the expert testimony and the proposed expert conclusions; even if an expert's testimony is reliable, it must be relevant and applicable to the subject matter at hand.[20] The Tenth Circuit has illustrated this principle by explaining "[t]estimony concerning the laws of quantum mechanics may be scientifically relevant, but may have no practical relevance to testimony concerning the function and possible failure of a water heater safety valve control."[21]

---

[15] Fed. R. Evid. 702.

[16] *SFF-TIR, LLC v. Stephenson*, 250 F. Supp. 3d 856, 1001 (N.D. Okla. 2017).

[17] *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 883 (10th Cir. 2005).

[18] *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) (citations omitted).

[19] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999).

[20] *Bitler*, 400 F.3d at 1234.

[21] *Id.*

### Dr. Fadala may not offer causation opinions

Dr. Fadala was offered by Thompson as an expert in muzzleloading rifle use, design, and operation.[22] Parts of Dr. Fadala's proposed testimony involves opinions on the cause of the rifle explosion. Mr. Stratton objects to those opinions, arguing that Dr. Fadala is not qualified to opine on the cause of the firearm explosion; his methods are flawed; and his opinions on the subject should be excluded.[23] Because Dr. Fadala's methods regarding the rifle's explosions are neither reliable nor relevant, he will be precluded from testimony on the subject.

Dr. Fadala opines that the Subject Rifle failed due to a "short start", which occurs when empty space is left between powder and projectile in a muzzleloading rifle, causing the entirety of the powder to ignite at once.[24] Dr. Fadala bases his conclusion on the presence of a visual signature in the remains of the Subject Rifle: a combination of the forepart of the barrel remaining intact,[25] a large debris field,[26] and some type of bulge deformity being present in the rifle barrel.[27] No further specific information about this visual signature is given; rather, Dr. Fadala states that he "know[s] what a short start looks like."[28]

### Dr. Fadala's methods are not reliable

While Dr. Fadala has tremendous experience with muzzleloading rifles, he has not established that the "visual signature" is a reliable way of determining the cause of a rifle

---

[22] Defendant's Updated Disclosure of Expert Testimony, docket no. 131, filed May 5, 2021, at 3.

[23] Motion to Preclude Fadala at 2.

[24] Dr. Sam Fadala Report ("Fadala Report"), Exhibit D to Motion to Preclude Fadala, docket no. 147-4, filed December 10, 2021, at 9; Excerpt from Sam Fadala's Muzzleloading Notebook, Exhibit D to Opposition to Motion to Preclude Fadala, docket no. 171-2, filed January 26, 2022, at 48. All page numbers of expert reports refer to the pages of the report itself, not the docketed document.

[25] Deposition of Sam Fadala dated September 18, 2021 ("Fadala Depo."), Exhibit C to Motion to Preclude Fadala, docket no. 147-3, filed December 10, 2021, at 59:12-60:14; Fadala Report at 13-14.

[26] Fadala Report at 15.

[27] Fadala Report at 11-14; Opposition to Motion to Preclude Fadala at 5.

[28] Fadala Depo. at 59:23- 60:14.

explosion. Dr. Fadala points to no peer reviewed studies or other forms of objective validation to demonstrate that this signature is a reliable way of identifying the cause of a gun explosion.[29] It is unclear if this signature can appear in the absence of a short start, if the presence of this signature always indicates a short start, or if a short start can occur without leaving this signature —in other words, the error rate is completely unknown. Indeed, Dr. Fadala states in a handbook he published that he has "seen barrels withstand several short started loads," but also has seen "barrels exploding into fragments with short started loads."[30] And the signature itself is not described in sufficient detail for its presence or absence to be reasonably challenged by Mr. Stratton. Dr. Fadala appears to primarily base his conclusion on "know[ing] what a short start looks like."[31] Dr. Fadala's analysis is thus "a subjective, conclusory approach that cannot reasonably be assessed for reliability," and accordingly does not meet the standards of Rule 702.[32]

Dr. Fadala claims support for his conclusions from tests he conducted where he blew up "hundreds of muzzleload[ing rifles]" and observed the results.[33] These tests are opaque to say the least. Dr. Fadala has not detailed the amount or type of gunpowder used in each test, the type of metal of the rifles, how specifically he created the short start, whether he used any type of controls, or indeed most of the factors a different expert would need to reconstruct or evaluate the tests. Dr. Fadala has also not disclosed any data from the tests, photographs or measurements

---

[29] The evidence Thompson references to support this assertion is Dr. Fadala's own book, which does not appear to be peer-reviewed. Excerpt from Sam Fadala's Muzzleloading Notebook, Exhibit D to Opposition to Motion to Preclude Fadala, at 47.

[30] Excerpt from Sam Fadala's Muzzleloading Notebook, Exhibit D to Opposition to Motion to Preclude Fadala, at 48.

[31] Fadala Depo. at 59:23-60:14.

[32] Federal Rules of Evidence 702, Advisory Notes.

[33] Fadala Report at 3.

of the tests, or the individual results of the tests. In these circumstances, Dr. Fadala's conclusions are nothing more than *ipse dixit*.[34] Therefore, Dr. Fadala has not met his burden of demonstrating that his methods are reliable.

### There is too large a gap between Dr. Fadala's methods and the conclusions he makes

Even if Dr. Fadala's testing methods had been reliable, there is not a "fit" between the methods he used and the conclusion he draws in this case.[35] The tests that Dr. Fadala conducted involved different guns and different circumstances than the gun and circumstances at issue here.[36] Not only did Dr. Fadala never conduct tests on an exemplar rifle, he has never tested any rifle manufactured by Thompson.[37] Dr. Fadala has also never conducted tests using the same type of powder that Mr. Stratton used or the same type of bullet as the Subject Bullet.[38] Nor is it clear if he has ever tested a rifle made with the same type or thickness of steel as the one at question here. In fact, Dr. Fadala has disclosed little information about the tests he conducted besides the rather cursory description that he has "personally tested hundreds of muzzleloaders to destruction, including using double projectiles, double loads, triple loads, quadruple loads, duplex loads, smokeless powder loads in black powder only firearms, pistol powder, short starts, and many combinations of this list."[39] In light of this lack of information, it is difficult to evaluate the extent to which the conclusions he draws from those tests are relevant here.

---

[34] *See Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791 (7th Cir. 2008).

[35] *See Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1204 (10th Cir. 2002).

[36] Fadala Depo. at 52:19-22.

[37] *Id*. at 41:1-7.

[38] *Id*. at 55:18-56:12.

[39] Fadala Report at 3.

These omissions would certainly not be fatal to Dr. Fadala's testimony if he established that the tests he conducted are applicable to these circumstances. For example, if Dr. Fadala opined that all guns which exploded due to a short start had the same signature, regardless of their maker, caliber, type of powder used, metal composition, metal thickness, and other characteristics, that would allow the results of his tests to be extrapolated to this case. In other words, Dr. Fadala needs to show that the tests he conducted are relevant here by linking his tests to his conclusions in this case.

But Dr. Fadala has provided no such opinions, and has not adequately linked the tests he has conducted to the conclusions he made or to the events at issue in this case. There is no way to conclude that the tests Dr. Fadala has conducted are relevant to the situation at hand. Therefore, his testimony fails the "fit" requirement of Daubert.[40]

Dr. Fadala also opines that the presence of Mr. Stratton's brother "may have distracted his attention from the vital practice of fully seating the projectile firmly on the powder charge and ensuring that there are no obstructions in the barrel."[41] This opinion is speculative and is not based on any reliable methods that Dr. Fadala was able to describe. Dr. Fadala may not testify to this at trial.

Dr. Fadala will be permitted to testify to the use, operation, and design of muzzleloading rifles. However, he has not demonstrated that his conclusions on the Subject Rifle's explosion were based on reliable methods, or that his methods have produced testimony which satisfies the fit prong of Rule 702. Accordingly, he will be precluded from testimony on the cause and mechanism of the Subject Rifle's failure.

---

[40] *United States v. W.R. Grace*, 455 F. Supp. 2d 1177, 1180 (D. Mont. 2006).

[41] Fadala Report at 13-14.

### Mr. Jiranek may not provide expert testimony based on methods that Dr. Block did not use.

Mr. Marlin Jiranek was offered by Thompson as an expert in metallurgy, firearm design, and material failure analysis.[42] Mr. Jiranek was offered as a substitute expert for Dr. Robert Block, who passed away during this litigation. Mr. Stratton moves to limit Mr. Jiranek's testimony concerning Finite Element Analysis (FEA), a type of computer modeling.[43] Mr. Stratton argues that because FEA is a method of expert analysis that Dr. Block did not use, and because substitute expert witnesses are limited to the subject matter and methods of the expert they are replacing, Mr. Jiranek cannot testify based on FEA.[44] Thompson argues that Mr. Jiranek is entitled to perform his own work, including using new methods, so long as his theories and conclusions match Dr. Block's.[45] Mr. Stratton is correct.

When determining if substitute expert testimony is admissible, courts typically look at the prejudice to the nonmoving party, pursuant to Federal Rules of Civil Procedure 26.[46] Substitute experts, while not bound to the testimony of the expert they are replacing, cannot meaningfully change their testimony from that of the previous expert. In other words, the testimony of the substitute expert must be "substantially similar" to that of the original expert.[47] The purpose of a substitute expert's testimony should be to put a party in as good as a position as they were prior to the loss of the original expert, not to designate a superior expert.[48] As a matter of fairness, the

---

[42] Defendant's Updated Disclosure of Expert Testimony at 2.

[43] Motion to Limit Testimony of Jiranek at 2.

[44] *Id.*

[45] Opposition to Motion to Limit Testimony of Jiranek at 4-5.

[46] *Al-Baaj v. Bennett*, No. 118CV00618DDDSTV, 2021 WL 6339611, at *1 (D. Colo. Sept. 24, 2021).

[47] *Shipp v. Arnold*, No. 4:18-CV-4017, 2019 WL 4040597, at *3 (W.D. Ark. Aug. 27, 2019).

[48] *Noffsinger v. Valspar Corp.*, No. 09 C 916, 2013 WL 12340488, at *6 (N.D. Ill. Jan. 4, 2013).

death of a party's expert "should not be a windfall for [that party]."[49] If a replacement expert uses new methods that the original expert did not use, testimony arising from those methods are typically precluded.[50]

Mr. Jiranek was designated as a substitute expert for Dr. Block. His report was not submitted until after the original deadlines for expert discovery, so the scheduling order was extended for the express purpose of allowing a "replacement expert" for Dr. Block.[51] Dr. Block did not conduct any type of computer modeling in his analysis of the rifle failure, let alone FEA.[52] Mr. Jiranek's proposed testimony on FEA goes far beyond the scope of Dr. Block's testimony. Permitting testimony on FEA would allow Thompson to benefit from the passing of their expert by designating a "superior expert" with additional methods and means of analysis.[53]

Thompson argues that although Mr. Jiranek was designated as a substitute expert, he is still entitled to express his opinions in his own language, including running his own tests. It is true that Mr. Jiranek is not required to regurgitate verbatim the proposed testimony of Dr. Block, and a "party is not meaningfully prejudiced by an opinion that merely departs from the general scheme [of the original expert] or only expands the scope."[54] But that does not allow a replacement expert to use entirely new methods which the original expert did not. Allowing that would frustrate the rationale behind allowing a replacement expert and provide a windfall to Thompson.

---

[49] *Baumann v. Am. Fam. Mut. Ins. Co.*, 278 F.R.D. 614, 616 (D. Colo. 2012).

[50] *Lincoln Nat. Life Ins. Co. v. Transamerica Fin. Life Ins. Co*., No. 1:04-CV-396, 2010 WL 3892860, at *3 (N.D. Ind. Sept. 30, 2010).

[51] Stipulated Motion to Amend Scheduling Order, docket no. 129, filed March 26, 2021.

[52] *See* Report of Findings of Dr. Robert Block, Exhibit C to Motion to Limit Testimony of Jiranek, docket no. 150-3, filed December 10, 2021.

[53] *Noffsinger*, 2013 WL 12340488, at *6.

[54] *Al-Baaj*, 2021 WL 6339611, at *1.

Therefore, the Motion to Preclude Jiranek will be granted, and Mr. Jiranek's testimony will be limited to exclude FEA and opinions based on FEA.

### Mr. Martini may testify about the characteristics of the subject bullet, but not about the cause of the explosion

Mr. Lance Martini is offered by Thompson as an expert in toolmark evidence and firearm failure.[55] He intends to offer testimony about "[t]he examination and evaluation of the subject bullet, the tree section which is reported to have been the impact surface of the subject bullet, as well as the internal, exterior, and terminal ballistics related to this incident."[56] Mr. Martini's report primarily analyzed the shape of and markings on the Subject Bullet, and made conclusions about the bullet's behavior based on that shape and those markings.   Mr. Stratton challenges Mr. Martini's qualifications to testify to the cause of the explosion. Mr. Stratton also challenges the reliability of

1. Mr. Martini's opinions on the cause of the Subject Rifle explosion, and

2. the portions of his report which discussed the cause of the Subject Rifle's barrel failure, including his conclusion that a defect in the barrel metal could be excluded as the sole cause of the barrel failure.

Because Mr. Martini is not qualified to opine on causation, his opinions on the cause of the barrel failure will be excluded.

### Mr. Martini's Causation Opinions

Mr. Martini makes several conclusions that go outside his area of expertise.  Specifically, Mr. Martini concludes that

---

[55] Defendant's Updated Disclosure of Expert Testimony at 2.

[56] Deposition of Lance T. Martini dated June 29, 2021 ("Martini Depo."), Exhibit C to Motion to Preclude Martini, Docket no. 148-3, filed December 10, 2021, at 15:6-17.

  1. A metal defect can be excluded as the sole cause of the Subject Rifle's failure[57]; and

  2. The failure was caused by a dramatic increase in pressure within the barrel from a barrel obstruction.[58]

Mr. Martini is not qualified to give these causation opinions, and to the extent he may be qualified to opine generally on firearms failure, he has not shown the methods he used to reach these conclusions are reliable. As Mr. Martini readily admitted during his deposition, he is not qualified to opine if the metal of the barrel was defective;[59] what capacity it had to withstand pressure;[60] the force an explosion (with or without a barrel obstruction) would have exerted on the gun barrel;[61] or how the metal fracture propagated. [62] The offered causation opinions necessarily require some type of expertise in metallurgy, material engineering, or material science, which Mr. Martini does not have.[63]

Even if Mr. Martini's stated expertise in "firearms failure analysis" qualified him to testify as to the cause of the failure, Mr. Martini does not explain *how* he knows that the pressure exerted by a barrel obstruction was enough for the rifle barrel to fail, or how he was able to determine that was the cause. When asked during his deposition as to how he knew that the bore obstruction caused the barrel to explode, he responded initially "[m]y conclusions are based on physical evidence aspects and observations which are based on the scientific analysis of the

---

[57] Report Of Thompson-Center Omega Black Powder Rifle Failure ("Martini Report"), Exhibit E to Motion to Preclude Martini, docket no. 148-5, filed December 10, 2021, at 7.

[58] *Id*.

[59] Martini Depo. at 14:2-12.

[60] *Id*. at 134:23-25.

[61] *Id*. at 134:11-22.

[62] *Id*. at 14:20-15:5.

[63] *Id*. at 11:3-13:8.

physical evidence,"[64] and later testified that "[w]hat I see in terms of physical evidence as relates to this case is consistent with my conclusions."[65] When asked to specify, he instead repeatedly deferred to Thompson's other experts.[66] These general and vague descriptions do not demonstrate that his methods were reliable or sufficient. While Mr. Martini may incorporate other expert's work into his analysis, he may not serve as a mouthpiece for another expert.[67] Because of his lack of qualifications and the failure to explain his methods outside of relying on Thompson's other experts, Mr. Martini's causation opinions do not meet the standards Rule 702 requires.

Thompson argues that Mr. Martini is not excluding that a metal defect was *a* cause of the explosion, but rather that the defect was the *sole* cause of the explosion. But this is a distinction without a difference. Mr. Martini is still offering an opinion about the cause of the gun barrel failure. Even if he were to opine that the gun barrel failed in part due to a bore obstruction, that conclusion implicitly involves a conclusion about the strength of the metal and the extent to which a metal defect played a role in its failure. Mr. Martini cannot opine to the cause of the gun barrel failure without also offering opinions on metal failure, the internal pressure capacity of the gun barrel, and whether a bore obstruction could have created an increase in pressure which exceeded that capacity. Accordingly, Mr. Martini may not offer causation opinions on the Subject Rifle's failure.

---

[64] *Id*. at 95:19-97:1.

[65] *Id*. at 135:13-136:4.

[66] Martini Depo. at 97:20-99:23, 134:19-135:1.

[67] *Thorne Rsch., Inc. v. Atl. Pro-Nutrients, Inc.*, No. 2:13-CV-784 TS, 2017 WL 396643, at *2 (D. Utah Jan. 30, 2017); *Ash Grove Cement Co. v. Emps. Ins. of Wausau*, 246 F.R.D. 656, 661 (D. Kan. 2007).

13

### Mr. Martini's Subject Bullet Opinions

To the extent Mr. Martini's opinions on the bullet shape are objected to, those objections are overruled. As Mr. Stratton admit in his Reply, Mr. Martini "is a qualified forensic scientist who can provide opinions on the shape of the bullet, markings, and its characteristics."[68] Testimony concerning the shape of and markings on the bullet, and the cause of those markings, is well within Mr. Martini's area of expertise. Mr. Martini has adequately laid out his methods, procedures, and data regarding the analysis of the Subject Bullet. Mr. Martini may testify to the shape of and markings on the Subject Bullet. He may also testify to the cause of those markings, including his conclusion that the Subject Bullet deformity is consistent with a deformity caused by a bore obstruction. There is no indication, and Mr. Stratton has not suggested, that Mr. Martini's reliance on the work of Dr. Block[69] and Mr. Jiranek is not typical of experts in the field.[70]

Therefore, the Motion to Preclude Martini is GRANTED IN PART and DENIED IN PART.

### Plaintiff's Motion to Exclude Cumulative Testimony is Denied

Mr. Stratton moves to exclude cumulative testimony of Dr. Fadala, Mr. Jiranek, and Mr. Martini under Federal Rule of Evidence 403, arguing that all three experts offer overlapping opinions on the cause of the Subject Rifle explosion. As a result of the rulings in this order, however, it appears that all three witnesses will testify in different areas: Dr. Fadala will testify to the proper use and maintenance of a muzzleloading rifle; Mr. Jiranek will testify to the cause

---

[68] Reply in Support of Motion to Preclude Martini at 1.

[69] Although Dr. Block is deceased, it is permissible for experts to rely on deceased expert's report if reasonable to do so in the relevant fields. *See Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir. 1997).

[70] *Stephenson v. Honeywell Int'l, Inc.,* 703 F. Supp. 2d 1250, 1255 n.2 (D. Kan. 2010).

of the Subject Rifle barrel failure, and Mr. Martini will testify to a ballistic analysis of the Subject Bullet.[71]

To the extent that the proposed testimony of the experts still overlaps, that can be dealt with at trial if necessary. While it is true that a party may not elicit the same testimony on the same subject from multiple witnesses, multiple experts may testify on the same subject matter, so long as they testify from different backgrounds and different areas of expertise.[72] Considering the different backgrounds and areas of expertise of Dr. Fadala, Mr. Jiranek, and Mr. Martini, it is unlikely their testimony will overlap. If Mr. Stratton feels the line is crossed during trial, he is able to make an objection.

### Defendant's Motion to Exclude Dr. Chandran is granted

Thompson moves to preclude Dr. Ravi Chandran because Mr. Stratton has not provided an expert report for Dr. Chandran, and because Mr. Stratton has represented that Dr. Chandran will not testify at trial.[73] Mr. Stratton does not oppose this motion.[74] Therefore, Dr. Chandran will be precluded from testifying at trial.

---

[71] While Mr. Jiranek's report does contain some discussion of ballistics, Thompson has stated that he will not testify to ballistics at trial.

[72] *Abbott Point of Care, Inc. v. Epocal, Inc.*, 868 F. Supp. 2d 1310, 1331 (N.D. Ala. 2012).

[73] Motion to Preclude Chandran.

[74] Response to Motion to Preclude Chandran.

**CONCLUSION AND ORDER**

IT IS HEREBY ORDERED that:

 A. Plaintiff's Motion to Exclude Fadala[75] is GRANTED IN PART and DENIED IN PART. Dr. Fadala may testify to the proper use and care of muzzleloading rifles. He may not testify to the cause of the Subject Rifle explosion.

 B. Plaintiff's Motion to Limit the Testimony of Jiranek[76] is GRANTED. Mr. Jiranek may not testify to FEA or to conclusions based on FEA.

 C. Plaintiff's Motion to Exclude Martini[77] is GRANTED IN PART and DENIED IN PART. Mr. Martini may testify to the shape and markings on the Subject Bullet, and the cause of that shape and those markings. He may not testify to the cause of the Subject Rifle explosion.

 D. Plaintiff's Motion to Exclude Cumulative Testimony[78] is DENIED.

 E. Defendant's Motion to Exclude Dr. Chandran[79] is GRANTED.

Dated June 13, 2022.

BY THE COURT:

David Nuffer
United States District Judge

---

[75] Docket no. 147, filed December 10, 2021.
[76] Docket no. 150, filed December 10, 2021.
[77] Docket no. 148, filed December 10, 2021.
[78] Docket no. 146, filed December 10, 2021.
[79] Docket no. 145, filed December 10, 2021.