THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ZANE STRATTON,<br><br>                    Plaintiff,<br><br>v.<br><br>THOMPSON/CENTER ARMS, INC.,<br><br>                    Defendant. | **MEMORANDUM DECISION AND ORDER LIMITING TESTIMONY BY VOCATIONAL EXPERTS**<br><br>Case No. 4:18-cv-00040-DN-PK<br><br>District Judge David Nuffer |

This case involves a permanent injury Plaintiff Zane Stratton suffered as a result of a muzzleloading rifle explosion. Mr. Stratton offers two experts to testify to his future lost earnings: Jacquelyn Vega Velez, a vocational expert, who will testify that Mr. Stratton has a work disability and the impact of this disability on Mr. Stratton's earning capacity and work-life; and Dr. Paul Thomas, an economist, who will project the economic effect of these impacts over Mr. Stratton's work-life (together, "Vocational Experts"). Both Ms. Vega Velez and Dr. Thomas are members of the same forensic economics firm, Vocational Economics, Inc ("VEI").

Defendant Thompson/Center Arms, Inc. ("Thompson") filed a motion to preclude the testimony of the Vocational Experts under Federal Rules of Evidence 702.[1] Mr. Stratton filed an opposition to the Motion,[2] and Thompson filed a reply.[3] A hearing was held on the motion on

---

[1] Motion to Preclude Testimony of Plaintiff's Vocational Economics Experts ("Motion"), docket no. 151, filed December 10, 2021.

[2] Plaintiff's Opposition to Defendant's Motion in Limine to Preclude the Testimony of Plaintiff's Expert Vocational Economics, docket no. 167, filed January 26, 2022.

[3] Defendant's Reply in Support of Motion to Preclude Testimony of Plaintiff's Vocational Economic Experts, docket no. 181, filed February 9, 2022.

July 7, 2022. Ms. Vega Velez testified at the hearing, as did Mr. R. Brad Townsend, a forensic

accountant retained by Thompson.[4]

**Contents**

Discussion .................................................................................................................................. 2
    Standard ............................................................................................................................... 2
    The Vocational Experts' Conclusions ................................................................................. 3
    The Vocational Experts have not demonstrated their methods are reliable or their
        testimony is relevant when applied to a specific individual. ................................. 5
    Mr. Stratton's and the Vocational Experts' Counterarguments on Reliability .................. 9
    Permissible Testimony ....................................................................................................... 11
Conclusion .............................................................................................................................. 12

## DISCUSSION

### Standard

Federal Rule of Evidence 702 provides the standard for admission of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if: (a) the expert's
> scientific, technical, or other specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in issue; (b) the testimony is based
> on sufficient facts or data; (c) the testimony is the product of reliable principles
> and methods; and (d) the expert has reliably applied the principles and methods to
> the facts of the case.[5]

The proponent of the expert testimony bears the burden of establishing that the offered expert

meets the standards required by Rule 702.[6]

Rule 702 requires an expert's opinion to be both reliable and relevant.[7] Reliability

requires a determination that "the reasoning or methodology underlying the testimony is

---

[4] Minute Entry for proceedings held before Judge David Nuffer, docket no. 202, filed July 7, 2022; Daubert Hearing Transcript dated July 7, 2022 ("Daubert Hearing Transcript"), docket no. 205, filed August 23, 2022.

[5] Fed. R. Evid. 702.

[6] *SFF-TIR, LLC v. Stephenson*, 250 F. Supp. 3d 856, 1001 (N.D. Okla. 2017).

[7] *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 883 (10th Cir. 2005).

scientifically valid," and that the reasoning or methodology is characterized by an appropriate degree of intellectual rigor.[8] In assessing reliability, a court may consider (but is not limited to)

> (1) whether a theory has been or can be tested or falsified, (2) whether the theory or technique has been subject to peer review and publication, (3) whether there are known or potential rates of error with regard to specific techniques, and (4) whether the theory or approach has "general acceptance."[9]

Relevance requires a "fit" between the expert testimony and the proposed expert conclusions; even if an expert's testimony is reliable, it must be relevant and applicable to the subject matter at hand.[10] The Tenth Circuit has illustrated this principle by explaining "[t]estimony concerning the laws of quantum mechanics may be scientifically relevant, but may have no practical relevance to testimony concerning the function and possible failure of a water heater safety valve control."[11]

### The Vocational Experts' Conclusions

The Vocational Experts have submitted a report calculating Mr. Stratton's diminution in work-life expectancy resulting from the accident.[12] "Work-life expectancy is the average number of years someone in a given group will spend working (or actively looking for work) during the remainder of his or her life."[13] Using a set of work-life probability tables, the Vocational Experts submit that Mr. Stratton has suffered a 34.7% diminution in his work-life expectancy.[14] From this calculated diminution in work-life expectancy, and from a "baseline" calculated from Mr.

---

[8] *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) (citations omitted).

[9] *Norris*, 397 F.3d at 884 (citations omitted).

[10] *Bitler*, 400 F.3d at 1234.

[11] *Id.*

[12] Vocational Economics, Inc Report for Zane Stratton, ("VEI Report"), Exhibit A to Motion, docket no. 151-1, filed December 10, 2021.

[13] *Lackey v. Robert Bosch Tool Corp.*, No. CV 16-29-ART, 2017 WL 129891, at *9 (E.D. Ky. Jan. 12, 2017).

[14] VEI Report at 6.

Stratton's earning capacity from 2017-2018 (which included fringe benefits and a conversion to 2019 dollars from 2017 and 2018 dollars), the Vocational Experts claim they are able to calculate the rough amount of future earnings Mr. Stratton has lost as a result of his injury.[15]

As part of their report, the Vocational Experts have appended a "Vocational Economic Rationale," ("VER") a document which purports to justify the Vocational Experts' methods.[16] The VER explains how the Vocational Experts conduct their evaluation of work-life diminution. The VER also presents arguments as to why the Vocational Experts' methods are reliable.

The work-life probability tables the Vocational Experts use to calculate Mr. Stratton's diminution in work-life expectancy are created from census data drawn from the U.S. Census Bureau's American Community Survey ("ACS").[17] Individuals responding to ACS make their own assessments of their functional limitations and report them in a survey.[18] The work-life probability tables were created from ACS data by Mr. David Gibson, a senior analyst for VEI.[19]

The Vocational Experts calculate Mr. Stratton's diminution in work-life expectancy by (1) taking a set of criteria (age, sex, education level, and disability status); (2) determining the remaining work-life years, on average, of a person with Mr. Stratton's age, sex, and education level who does not have a disability; (3) determining the remaining work-life years, on average, of a person with Mr. Stratton's age, sex, and education level with a "non-severe physical disability"; and (4) calculating the difference in work-life years between the two classes of

---

[15] *Id*.

[16] *Id*. at 7.

[17] *Id*. at 5.

[18] *See id*. at 11; *see also Boerste v. Ellis, LLC*, No. 317CV00298BJBCHL, 2021 WL 6101678, at *15 (W.D. Ky. Sept. 29, 2021), report and recommendation adopted, No. 3:17-CV-298-BJB-CHL, 2021 WL 5449003 (W.D. Ky. Nov. 22, 2021).

[19] Daubert Hearing Transcript at 56:17-21.

persons: here, 34.7%. The Vocational Experts have not demonstrated that these methods are reliable or applicable to an individual.

### The Vocational Experts have not demonstrated their methods are reliable or their testimony is relevant when applied to a specific individual.

For the Vocational Experts' testimony to be admissible, their methods must be reliable and relevant. Here, the categories that the Vocational Experts use to calculate their work-life expectancy tables are broad to the point that the testimony based of those tables is neither reliable nor relevant when applied to an individual. The Vocational Experts conclude that a 26-year-old male with a non-severe physical disability and some college education will work 11.3 years less than a 26-year-old male without a disability and with some college education.[20] This may very well be true when taken across a cross-section of a population. But it does not provide relevant or reliable evidence that Mr. Stratton will work 11.3 years less after his injury. Two issues are particularly obvious in the Vocational Experts' analysis: the Experts' categorizations of disabilities and the failure of the tables to take vocations and vocational skills into account.

First, the Vocational Experts' definition of "disability" is not well-defined or well-delineated. The Vocational Experts divide disabilities into physical, cognitive, self-care, going outside home, hearing, physical, and mobility disabilities, which in turn are divided into "severe" and "non-severe" disabilities.[21] The Vocational Experts define non-severe physical disabilities (which they classify Mr. Stratton as possessing)[22] as a "condition that substantially limits one or more basic physical activities such as walking, climbing stairs, reaching, lifting, or carrying," but excluding conditions which cause difficulties with self-care, going outside the home, or other

---

[20] VEI Report at 6.

[21] *Id*. at 12-13.

[22] *Id*. at 6.

functional limitation.[23] Non-severe physical disabilities can presumably include functional impairments of any degree of severity to any part of the body, such as foot injuries, hand injuries, or chest injuries.[24] Other factors such as age of disability onset, further recovery or loss of function, or percent of impairment also differ between individuals and disabilities. These factors could lead to different work-life diminutions, yet are not accounted for in the Vocational Experts' analysis.[25] "Because disabilities come in all types, this broad comparison of "[not disabled]" to "[non-severe disability]" is unreliable and speculative," and further demonstrates the limited relevance of the Vocational Experts' proposed testimony.[26]

Second, the tables do not separate by vocation or by the skills required in each vocation. For example, Ms. Vega Velez testified that people with sedentary jobs and people with physically demanding jobs would be included without distinction in the cross-section Mr. Stratton is placed in.[27] There are innumerable types of jobs, and different skills sets are required for different jobs. Even for persons who have the type of functional limitation specified in the ACS survey, there is an enormous range in the effect of those limitations on a person's ability to work. There is a drastically different skillset required of a laborer than a date entry professional, yet the Vocational Experts would categorize them as the same type of worker if they are the same sex, age, and have the same education level.

---

[23] *Id*. at 11-12.

[24] A newer version of the ACS replaces the physical limitation question with one based on mobility. *Id*. at 13. It is unclear how that affects the Vocational Experts' categorization of injuries, but does not alter the analysis here.

[25] *See Dorman v. Anne Arundel Med. Ctr.*, No. CV MJG-15-1102, 2018 WL 2087393, at *8 (D. Md. May 4, 2018), aff'd sub nom. *Dorman v. Annapolis OB-GYN Assocs., P.A.*, 781 F. App'x 136 (4th Cir. 2019).

[26] *Id*.

[27] Excerpt from Deposition of J. Vega Velez, dated January 13, 2021 ("Vega Velez Depo."), docket no. 151-6, filed December 10, 2021, at 50:21-51:6.

Because of these issues, the Vocational Experts' general model is not applicable to an individual's specific circumstances. If an expert opinion is based on overly general statistical data, the data can render an expert opinion unreliable[28] and irrelevant.[29] The only five delineations that the tables use are age, sex, education level, general type of disability, and general severity of injury. The category of worker Mr. Stratton has been placed into—a 26-year-old male with some level of college and a non-severe physical disability—is a cross-section of population so wide to the point of uselessness for statistical analysis. A singer with a shoulder injury could fit in this category just as easily as a stenographer of the same age with a hand injury, yet each would be affected differently by their injures. However, based on the opinions offered by the Vocational Experts, the singer and stenographer's work-life expectancy would be affected *exactly the same*, diminishing 11.3 years after their respective injuries. This outcome illustrates the perils of applying "broad survey data to the circumstances of a specific individual."[30]  Furthermore, the Vocational Experts' model appears to presume that *every* person who suffers some sort of physical impairment will always, without fail, suffer a diminution in work-life expectancy. This proposition seems dubious at best. While the use of broad survey data is not always unreliable, its application here does not meet the standard Federal Rule of Evidence 702 requires.

The Vocational Experts' primary deficiency is that they fail to show that their methods, even if accurate for the general population, "can reliably predict the future work-life expectancy of a specific person."[31] Neither the data itself nor its use in the general sense appear problematic.

---

[28] *Roniger v. McCall*, No. 97 CIV. 8009 (RWS), 2000 WL 1191078, at *3 (S.D.N.Y. Aug. 22, 2000).

[29] *Toor v. HomeGoods, Inc*., No. CV 16-1132, 2018 WL 901720, at *3 (D.N.J. Feb. 15, 2018).

[30] *Sturgis v. R & L Carriers, Inc.*, 554 F. Supp. 3d 976, 985 (N.D. Ind. 2021) (quoting N.C. Ostrofe, Does the Vocational Economic Rationale Have Merit?—An Appraisal, 20 J. Legal Econ. 61, 71 (July 2014)).

[31] *Noel v. Inland Dredging Co., LLC*, No. CV 17-1989, 2018 WL 1911821, at *2 (E.D. La. Apr. 23, 2018).

For example, the general proposition that persons with disabilities have a diminution in work-life expectancy compared to persons without disabilities does not appear to be controversial or even challenged. But the Vocational Experts' attempt to take that general premise, that persons with disabilities have a diminished work-life expectancy, and attempt to apply it to Mr. Stratton's situation, is not based on a reliable foundation. The Vocational Experts have not established that the use of their methods in the specific, as opposed to the general, is reliable or relevant to the situation at hand.

Other courts have echoed these conclusions. In *Sturgis v. R & L Carriers, Inc.*, the testimony of David Gibson (a senior analyst at VEI who appeared to use the same methods as the Vocational Experts did here, and who created the worklife probability tables) was excluded under Rule 702.[32] In excluding Mr. Gibson, Judge Damon R. Leichty noted that failing to consider the injured party's specific occupation in calculating a diminution in work-life "necessarily implies the risk of error beyond a reliable and recognized economic method."[33] Similarly, in *Lackey v. Robert Bosch Tool*, Judge Amul Tharpar precluded an expert who relied on similar work-life expectancy tables, noting the expert "grouped [the injured person] with a wide range of disabled persons, with little to no regard for the type or permanency of the injury, work history, or the ability and intention to return to work."[34] And in *Noel v. Inland Dredging Company, LLC*, Judge Sarah Vance precluded an expert from using the "Gibson Gamboa Worklife Tables" to calculate work-life diminution because "individuals can be classified as disabled for many reasons" and "plaintiff fail[ed] to show that these tables can reliably predict

---

[32] *Sturgis*, 554 F. Supp. 3d at 987.

[33] *Id.* at 985.

[34] *Lackey*, 2017 WL 129891, at *10.

the future work-life expectancy of a specific person."[35] In other cases, the methodology of the Vocational Experts has been approved, but those cases, due to different issues presented and different challenges made by counsel, are less persuasive than the above cases.

"Generalized community data is insufficiently tailored to these facts as presented, and therefore, will not assist the jury in the determination of a damages award."[36] And the Vocational Experts' attempts to take this generalized data and apply it to Mr. Stratton's case have not been shown to be reliable. Therefore, the Vocational Experts' proposed testimony fails both the relevance and the reliability prongs of Federal Rules of Evidence 702.

### Mr. Stratton's and the Vocational Experts' Counterarguments on Reliability

Counsel for Mr. Stratton argued at the *Daubert* hearing that Vocational Experts' methods are reliable. The VER submitted by the Vocational Experts also purports to demonstrate why the Vocational Experts' methods are reliable. The arguments advanced by counsel and the Vocational Experts do not overcome the issues with the Vocational Experts' proffered testimony.

Counsel for Mr. Stratton and the Vocational Experts contends that the methods are reliable because the ACS is widely accepted as a reliable source of data.[37] However, that is all the ACS is: a collection of data. And while the ACS data itself may be reliably collected, that does not mean that all methods and extrapolations that use the data are themselves reliable. "Reliability 'is primarily a question of the validity of the methodology employed by an expert, not the quality of the [underlying collected] data used in applying the methodology or the conclusions produced.'"[38] Examination of the expert's methodology necessarily considers the

---

[35] *Noel*, 2018 WL 1911821, at *2.

[36] *Toor*, 2018 WL 901720, at *3.

[37] Daubert Hearing Transcript at 17:2-5; VEI Report at 18-19.

[38] *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1263 (10th Cir. 2014) (quoting *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013)).

expert's methods of analysis and use of data. No matter how reliable the ACS data itself is, the question for the gatekeeper is whether the Vocational Experts' *methods* by which they draw *conclusions* are reliable. Mr. Stratton has not met his burden of establishing the reliability of the Vocational Experts' methods.

Counsel for Mr. Stratton further argued that the Vocational Experts' methods are generally accepted in their field.[39] But the Vocational Experts have not provided sufficient evidence of this. Many of the sources the Vocational Experts cite to show general acceptance in their field use the same ACS data as the Vocational Experts' analysis, but not necessarily the same methodology.[40] The sources the Vocational Experts provide which appear to use the ACS data in similar ways are primarily created by other members of VEI, such as Mr. Gibson.[41] Work done by co-workers does not show general acceptance in the field. The only papers the Vocational Experts cite which are clearly not published by members of VEI appear to use dissimilar methods, such as papers discussing the economic consequences of disabilities on individuals receiving social security disability payments.[42] These papers, standing alone, do not show that the Vocational Experts' methods are generally accepted in their field. In fact, the methods used by VEI appear to be the subject of "considerable controversy."[43]

Finally, counsel argues that the Vocational Experts have been repeatedly admitted as experts, and Ms. Vega Velez has never been excluded.[44] While that may be true, each court has a duty to perform its gatekeeping role under Rule 702 in every case, based on the record before

---

[39] Daubert Hearing Transcript at 30:4-9.

[40] VEI Report at 16-17; Vega Velez Depo at 42:23-44:5.

[41] VEI Report at 16-17.

[42] *Id*.

[43] Ostrofe, supra, at 71 (citation omitted).

[44] Daubert Hearing Transcript at 16:17-23.

it.[45] Based on the record before this court, the Vocational Experts have not established that their methods can survive a Rule 702 analysis. Furthermore, although Ms. Vega Velez may never have been excluded, other experts from VEI (such as Mr. Gibson), who appear to use the same methods as the Vocational Experts, have been excluded.[46]

Counsel for Mr. Stratton argue that many of Thompson's arguments go to weight, not admissibility. But the deficiencies in the Vocational Experts' methods are severe enough that much of the challenged testimony is inadmissible.

### Permissible Testimony

Although the Vocational Experts have not shown their methods can reliably show Mr. Stratton's diminution in work-life years, that does not mean all of their evidence and conclusions are inadmissible.

Thompson has not challenged the Vocational Experts' conclusions that persons with a disability work on average less work-life years than persons without a disability.[47] That testimony will be permitted.

Thompson has challenged the Vocational Experts' conclusions about Mr. Stratton's pre-injury earning capacity, arguing that the Vocational Experts' conclusions are nonsensical because they use Mr. Stratton's earnings in the years after his injury to represent Mr. Stratton's post-injury earning capacity.[48] But this argument ignores what the Vocational Experts are measuring: Mr. Stratton's maximum possible earnings. If anything, Mr. Stratton could have conceivably earned more in 2017 and 2018 had he not been injured, and his maximum possible

---

[45] See *Sturgis*, 554 F. Supp. 3d at 986-87.

[46] *Id*.

[47] VEI Report at 8-11.

[48] Motion at 10.

earnings could have been higher. As was explained during the *Daubert* hearing, the Vocational Experts felt 2017 and 2018 were a more accurate representation of what Mr. Stratton could conceivably make in a year than other years, due to Mr. Stratton's developing business.[49]

Unlike the Vocational Experts' methodology for Mr. Stratton's diminished work-life, the Vocational Experts' conclusions about Mr. Stratton's career earnings come from analysis specific to Mr. Stratton. The Vocational Experts' methods fit the conclusions they draw, and their choice to use 2017 and 2018 to represent Mr. Stratton's maximum earning capacity is not fatally unreliable. Certainly, the choice of years, as well as the fact that Mr. Stratton's actual income in 2020 did not match the model's predictions,[50] renders the Vocational Experts' prediction of Mr. Stratton's pre-injury earning capacity controvertible. But the remedy for "shaky but admissible" expert testimony is vigorous cross examination, not exclusion.[51] Therefore, the Vocational Experts' conclusions about Mr. Stratton's pre-injury career earning capacity are admissible.

## CONCLUSION

Accordingly, the Motion[52] is GRANTED IN PART and DENIED IN PART. The Vocational Experts may testify to Mr. Stratton's pre-injury earning capacity, and they may testify that, generally, persons with disabilities will suffer a diminution in their work-life. However, as repeatedly emphasized above, the Vocational Experts have not shown that their methods on diminution can be applied to a specific individual with a specific disability.

---

[49] Daubert Hearing Transcript at 6:14-34.

[50] Daubert Hearing Transcript at 37:19-22.

[51] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

[52] Docket no. 151, filed December 10, 2021.

Therefore, the Vocational Experts may not testify as to the diminution in work-life years Mr. Stratton specifically will suffer.

Signed August 25, 2022.

BY THE COURT

David Nuffer
United States District Judge